*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ESTATE OF DOROTHY THOMSON, By and through as
Co-Personal Representatives of the Estate of Vicky
Rakestraw and Darcy Horvat; COLLEEN MILLER,
                              *Plaintiffs-Appellants*,

     *v.*

TOYOTA MOTOR CORPORATION WORLDWIDE;
THRIFTY RENT-A-CAR SYSTEMS, INC.,
                              *Defendants-Appellees.*

No. 07-3813

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02431—Ann Aldrich, District Judge.

Argued:  June 5, 2008

Decided and Filed:  July 30, 2008[*]

Before:  GILMAN and COOK, Circuit Judges; COHN, District Judge.[**]

---

## COUNSEL

**ARGUED:**  Douglas P. Desjardins, CLAPP, DESJARDINS & ELY, Washington, D.C., for
Appellants.  Robert A. Brundage, BINGHAM McCUTCHEN, San Francisco, California, Hilary
Sheldon Taylor II, WESTON HURD, Cleveland, Ohio, for Appellees.  **ON BRIEF:** Douglas P.
Desjardins, CLAPP, DESJARDINS & ELY, Washington, D.C., for Appellants.  Hilary Sheldon
Taylor II, WESTON HURD, Cleveland, Ohio, Dennis P. Ziemba, ECKERT, SEAMANS, CHERIN
& MELLOTT, Philadelphia, Pennsylvania, Kelly C. Scandy, MONTGOMERY, RENNIE &
JONSON, Cincinnati, Ohio, for Appellees.  Erika Z. Jones, Adam C. Sloane, MAYER BROWN,
Washington, D.C., for Amici Curiae.

---

[*]This decision was originally issued as an "unpublished decision" filed on July 30, 2008.  On October 7, 2008,
the court designated the opinion as one recommended for full-text publication.

[**]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by
designation.

---

**OPINION**

---

AVERN COHN, District Judge.  This is a tort case.  Plaintiffs-Appellants, the Estate of Dorothy Thomson ("the Estate") and Colleen Miller sued Defendants-Appellees, Toyota Motor Corporation Worldwide ("TMC") and Thrifty Rent-A-Car Systems, Inc. ("Thrifty") in the Northern District of Ohio following a car accident in South Africa in which Colleen Miller and Dorothy Thomson were injured.  Thomson subsequently died from her injuries.  The district court granted TMC's motion to dismiss for lack of personal jurisdiction and *sua sponte* dismissed plaintiffs' claims against Thrifty under the doctrine of *forum non conveniens*.  For the reasons that follow, we affirm.

## I.  BACKGROUND

In late September 2005, Miller and Thomson, her mother, went on vacation to South Africa.  They were joined by Rita Miller, Colleen Miller's daughter-in-law.  On September 28, 2005, Rita Miller rented a Toyota Condor from a "Thrifty Car Rentals" at the airport in Port Elizabeth, South Africa.

On October 3, 2005, Rita Miller's husband was driving the car.  Thomson, Colleen Miller, and Rita Miller were passengers.  Plaintiffs allege that the brakes "malfunctioned and seized."  They further allege that the bonded brake lining of the brake shoe came unglued and then wedged between the brake shoe and the brake drum.  Plaintiffs say that this caused the car to become uncontrollable and resulted in a crash.  Thomson and Colleen Miller were seriously injured, and Thomson died on October 9, 2005, due to complications from her injuries.

Colleen Miller and the Estate, citizens of Ohio, sued TMC and Thrifty in the district court for the Northern District of Ohio.  TMC filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Fed. R. Civ. P. 12(b)(3) for improper venue, or in the alternative for *forum non conveniens*.  Thrifty filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The district court granted TMC's motion for lack of personal jurisdiction and *sua sponte* dismissed Thrifty on the grounds of *forum non conveniens*.  Plaintiffs appeal.

## II.  ANALYSIS

### A.  Dismissal of TMC - Lack of Personal Jurisdiction

### 1.  Legal Standards

We review *de novo* a district court's dismissal for lack of personal jurisdiction under Rule 12(b)(2).  The plaintiff bears the burden of establishing the existence of jurisdiction.  *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006).  Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal quotation marks omitted) and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id*. at 1459.

In a diversity case such as this, we examine the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). We apply a two-step test to determine whether the district court properly determined that it lacked personal jurisdiction over TMC. First, we must determine whether Ohio law authorizes jurisdiction. *Brunner*, 441 F.3d at 463. If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits. *Calphalon Corp.*, 228 F.3d at 721 (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause")(citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n. 1 (Ohio 1994) (per curiam)). Accordingly, "when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met." *Walker v. Concoby*, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999).

Two kinds of personal jurisdiction that can be exercised under Ohio law:

> Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (citation omitted). Here, plaintiffs contend that TMC is subject to general jurisdiction. General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (internal quotation marks omitted).

## 2. Application

The district court determined that TMC did not have sufficient contacts with Ohio to support general jurisdiction under Ohio's long-arm statute or comport with due process. We agree. TMC is a Japanese corporation headquartered in Japan. It does not conduct any business, have any employees, or own property in Ohio. It does not market or ship any vehicles into the United States, much less into Ohio.

Plaintiffs, however, say that because TMC's shares trade on the New York Stock Exchange, the company has a presence in the United States. This argument is unavailing. The focus is on any TMC contacts with Ohio, such contacts being necessary to establish jurisdiction. Whether or not TMC has shares publically traded on a stock exchange is irrelevant.

Plaintiffs also argue that TMC has numerous United States subsidiaries and a national presence. This argument, as the district court noted, "intentionally blurs the line between two separate and independent corporations: TMC, the maker of the Condor, incorporated in Japan, and Toyota Motor Sales, U.S.A., Inc., a separate and independent company incorporated in California that imports vehicles into the U.S., including Ohio." (J.A. 26.) This argument raises a critical point in the jurisdictional analysis: the extent to which a parent corporation is subject to general jurisdiction based on activities of a subsidiary.

As one of our sister Circuits has explained:

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases). Normally, courts apply the alter-ego theory of personal jurisdiction to parent-subsidiary relationships. The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003).

Courts in this Circuit, in several unpublished opinions, have endorsed the use of the alter-ego theory to exercise personal jurisdiction. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 736-38 (6th Cir. 2003); *Niemi v. NHK Spring Co. Ltd.*, No. 3:03 CV 7512, 2006 WL 954248, *1 (N.D. Ohio Apr. 12, 2006); *Simsa v. Gehring L.P.*, No. 05 CV 72159, 2006 WL 467914, *4 (E.D. Mich. Feb. 24, 2006); *Bradford Co. v. AFCO Mfg.*, No. 1:05 CV 449, 2006 WL 143343, *4 (S.D. Ohio Jan. 19, 2006); *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, No. 1:04 CV 1439, 2004 WL 3403352, * 7-8 (N.D. Ohio Dec. 15, 2004); *Med. Distrib., Inc. v. Quest Healthcare, Inc.*, No. 3:00 CV 154, 2002 WL 32398447, *4-*5 (W.D. Ky. Feb. 1, 2002); *see also Warren v. Dynamics Health Equip. Mfg. Co.*, 483 F. Supp. 788, 792-93 (M.D. Tenn. 1980). These cases are in line with other federal cases permitting courts "to 'pierce the corporate veil' of the subsidiary and impute personal jurisdiction from the subsidiary to the parent." *Invacare Corp.*, 2004 WL 3403352, at *7.

In applying the alter-ego theory of personal jurisdiction in this diversity action, we must look to Ohio law. Although Ohio law sets forth a formal test for veil-piercing, "the legal conception [of alter-ego liability] has historical antecedents in both federal and state law. Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in [Ohio law] without usurping its authority." *Music Express Broad. Corp. v. Aloha Sports*, *Inc.*, 831 N.E.2d 1087, 1091 (Ohio Ct. App. 2005). In determining whether a subsidiary is an alter ego of the parent corporation, Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent. *See Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205, 2006 WL 2225821, *6 (N.D. Ohio Aug. 2, 2006). This Court has considered additional factors such as (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation. *See id*.

Plaintiffs argue that Toyota Motor Sales, U.S.A, Inc. ("TMS") is the alter ego of TMC. TMS is a subsidiary of TMC which imports and sells Toyota vehicles in the United States, including Ohio. However, the record supports the district court's conclusion that TMS and TMC are not alter egos. As stated in the affidavits of Katsumi Ikeda and Jerry Koyanagi, employees of TMC and TMS respectively, TMC and TMS are separate legal entities. They have separate books, financial records, bank accounts, and file their own taxes. They have separate boards of directors and workforces. TMS employees report to TMS, not TMC. TMS, not TMC, controls the distribution of vehicles into the United States, including Ohio. TMS officers manage the day-to-day operations of TMS. TMC does not directly own any TMS stock nor does it have authority over TMS with regard to the distribution of vehicles. While plaintiffs say that TMC makes money from Ohio, they cite no

evidence in support. Indeed, plaintiffs refer to the affidavits submitted by TMC which, as stated above, prove that TMC and TMS are separate. There is no statement in either affidavit indicating that TMC makes money from Ohio. In short, TMS is not an alter ego of TMC.

Moreover, plaintiffs rely on *United States v. Toyota Motor Corp.*, 561 F. Supp. 354 (C.D. Cal. 1983), for the proposition that other courts have exercised general jurisdiction over TMC. Plaintiffs misapprehend the holding of the case. In *Toyota Motor Corp.*, the district court considered whether to enforce an IRS summons over the Japanese company in California, the state of incorporation of TMS. The district court specifically noted that it was "necessary to determine only whether the Government has satisfied its burden of making out a *prima facie* case for *limited jurisdiction*. The Court expresses no opinion on whether the more stringent test for *general jurisdiction* has been satisfied." *Id*. at 359 (emphasis added). Thus, not only did the case arise in the non-analogous context of enforcing an IRS summons, it did not address whether TMC was subject to general jurisdiction.

### 3. Additional Discovery

Plaintiffs also request a remand for additional discovery to support their argument of jurisdiction over TMC. Plaintiffs, however, did not request additional discovery in the district court. They cannot do so now. *See In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) (arguments not raised below are waived on appeal).

Overall, plaintiffs have not established that TMC had any, much less continuous and systematic, contacts with Ohio sufficient to establish general jurisdiction. That TMC has a national presence in the United States in a generic sense does not show that it is subject to general jurisdiction in Ohio. We therefore affirm the district court's dismissal of TMC for lack of personal jurisdiction. Moreover, as explained below regarding Thrifty, this case belongs in the South African courts.

### B. Dismissal of Thrifty - *Forum Non Conveniens*

### 1. Legal Standards

The district court dismissed Thrifty on the grounds of *forum non conveniens*. We review the district court's decision for an abuse of discretion. *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006).

The Supreme Court has explained that the common law doctrine of *forum non conveniens* reflects a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996) (citations omitted). The Supreme Court has further explained that the doctrine is essentially "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). The doctrine is a flexible one, requiring the court to weigh multiple factors relating to fairness and convenience based on the particular facts of the case. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981). Thus, where a district court "has considered the relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id*. at 257.

The first step in the *forum non conveniens* analysis is establishing an adequate alternative forum. *Id.* at 354 n. 22. The second step requires a balance of private and public factors listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947), *superceded on other grounds by* 20 U.S.C.

§ 1404, to determine whether a trial in plaintiffs' chosen forum would be unnecessarily burdensome for the defendant or the court. *See Piper Aircraft*, 454 U.S. at 255 n.23. Private factors include the

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil*, 330 U.S. at 508. The public factors include

> court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil*, 330 U.S. at 509).

### 2. *Sua Sponte* Dismissal

As an initial matter, the district court's decision to *sua sponte* dismiss was not improper. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In *Chambers*, the Supreme Court listed a number of judicial acts as within a court's inherent authority, including dismissal on the grounds of *forum non conveniens*. *Id.* at 44 (citing *Gulf Oil*, 330 U.S. at 507-08).

Moreover, plaintiffs' argument that the district court's decision was improper because Thrifty presented no evidence in support is not well-taken. Although Thrifty did not move for dismissal on the grounds of *forum non conveniens*, and consequently did not present any argument on this issue, it joined in TMC's motion on these grounds and TMC's motion contained arguments and documents relevant to the issue that applied to Thrifty. Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. *See* Fed. R. Civ. P. 10(c). Thus, Thrifty incorporated from TMC facts relevant to the issue of *forum non conveniens*. Moreover, plaintiffs were able to respond and present arguments against dismissal on these grounds and the record is fully developed on this issue.

### 3. Adequate Alternative Forum

Plaintiffs first argue that the district court erred in determining that an adequate alternative forum exists in South Africa. The adequate alternative forum requirement is satisfied by a showing that a defendant is "amenable to process" in the foreign jurisdiction. *Gulf Oil*, 330 U.S. at 506-07. Plaintiffs say that because Thrifty has denied that it is the proper defendant in this action, there has not been a showing of an adequate alternative forum.

This argument misses the point. While Thrifty asserts it is not a proper defendant, it has not asserted that plaintiffs are unable to sue any entity connected with them. Indeed, the record shows that Thrifty entered into a License Agreement with an entity called the Safy Group ("Safy") and Safy conducts business in South Africa using Thrifty's name. Thrifty also notes that the contract signed by Rita Miller not only contains the name "Thrifty," but also "Dollar," "Buzz Car Rental," and "Sani Van Rentals." It also indicates that the vehicle was rented from "South African Licensee, Spring Car Wholesaler CC." Thrifty further explains that Safy is a substantial corporation present in South Africa that operates, using the Thrifty and Dollar names under the license agreement, Buzz Car Rental, a trading entity within Spring Care Wholesalers, CC, a division of Safy. Thrifty also says that in addition to Safy, other entities known as the Safy Trust, Buzz Car Rental, and Spring Car Wholesaler CC are South African corporations. Thus, Thrifty is not, as plaintiffs contend, trying

to hide its corporate identity, but rather makes clear that Safy, or its affiliates listed above, is the entity with whom plaintiffs contracted. Thus, an adequate forum exists in South Africa and there are corporate entities, indeed the proper entities, in South Africa which are amenable to service.

### 4. Plaintiffs' Choice of Forum

Plaintiffs argue that the district court did not give due deference to their choice of forum. In general, the deference due a plaintiff's choice of a home forum permits dismissal only when the defendant "establish[es] such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *see also Piper Aircraft*, 454 U.S. at 255-56 n. 23 ("In *Koster*, we stated that '[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'").

Here the district court did not specifically state that it was giving heightened deference to plaintiffs' chosen forum; however, it did acknowledge that a plaintiff's choice of forum is ordinarily not to be disturbed. (*See* J.A. 32.) It is also clear that the district court considered all of the *Gulf Oil* factors and found that they weighed in favor of a South African forum. Given this, it follows that the district court concluded that plaintiffs' chosen forum was simply not outweighed by the many factors favoring South Africa. *See Koster*, 330 U.S. at 524. Moreover, we have stated that a district court need not make a "finding" that trial in the United States forum would be "oppressive" or "vexatious" to the defendants. *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986). We have also explained that the fact of a plaintiff filing suit in his home forum does not automatically bar dismissal on *forum non conveniens* grounds. *Id.* (citing *Piper Aircraft*, 454 U.S. at 255 n.23).

### 5. *Gulf Oil* Factors

Plaintiffs next contend that the district court did not properly balance the *Gulf Oil* private and public interest factors. We disagree.

As to the private interest factors, it is clear that they weigh in favor of South Africa. The vehicle involved in the accident was purchased, kept, maintained, and rented in South Africa. The accident occurred in South Africa. Plaintiffs were treated in South Africa. Documents related to the vehicle, the accident investigation, and plaintiffs' medical records are all located in South Africa. Witnesses, other than family members of plaintiffs, are located in South Africa. Such witnesses include those involved in the sale, maintenance, and rental of the vehicle, law enforcement who investigated the accident, and medical personnel involved in plaintiffs' treatment.

Plaintiffs say that they are in possession of many of the relevant documents and therefore there is no need to obtain documents from South Africa. Even assuming this was the case, although Thrifty vigorously contends otherwise, plaintiffs have not adequately shown the availability of relevant witnesses in South Africa. Plaintiffs cite the Hague Convention, noting that the United States and South Africa are signatories. However, as the district court noted, South Africa specifically declared in its Reservations and Declarations that "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries, will not be executed." The district court noted that it may lack the power to compel documents or witnesses because of this reservation. Even assuming compulsory process may be obtained, the cost of procuring evidence and willing witnesses from South Africa would be prohibitively expensive. The fact that witnesses were not specifically identified is not fatal to a finding that a dismissal on *forum non conveniens* grounds is proper. *See Piper Aircraft*, 454 U.S. at 258.

As to the public interest factors, the district court explained:

The result of this trial will have a greater impact on the residents of South Africa; the car was manufactured to the requirements of vehicles operated in South Africa, not those that govern vehicles in the United States. Any outcome might alter those requirements for vehicles in South Africa. If the case continued in this court, American jurors would be burdened by a case whose resolution will be felt the greatest in South Africa, while South African citizens would be deprived of hearing a case regarding the safety of a vehicle marketed, sold, and used in their country.

(J.A. 30.) While plaintiffs say that the Estate is administered by two Ohio citizens, and Colleen Miller is an Ohio citizen who continues to see doctors in Ohio these facts are not sufficient to tip the balance in favor of plaintiffs' choice of forum.

Moreover, the district court considered the choice of law issue, concluding that under Ohio choice of law rules, South African law would likely apply. Apparently, the parties did not brief the choice of law issue extensively before the district court. Nevertheless, the district court engaged in a rather detailed analysis. On appeal, plaintiffs challenge the district court's conclusion, stating that the district court failed to first find a conflict between Ohio law and South African law. Thrifty suggests that Ohio choice of law rules do not first require the existence of a conflict and says that the district court's view is correct. We need not reach this issue because the factors discussed above so clearly point in favor of adjudication of this case in South Africa.

The difficulties occasioned upon plaintiffs in having to litigate their case in South Africa are not unappreciated. However, this is a products liability action in which the product at issue - a Toyota Condor - was designed in Japan and manufactured, marketed, sold, and rented in South Africa. It is not sold in the United States. The majority of the evidence, other than what plaintiffs have procured, is located in South Africa. The witnesses, with the exception of Colleen Miller and plaintiffs' family, are in South Africa. South Africa has a greater overall interest in the outcome of this ligation than the United States. The district court was correct in determining that South Africa is the most convenient and proper forum.

### III. CONCLUSION

For the reasons stated above, the decision of the district court is AFFIRMED.