JANE B. STRANCH, Circuit Judge.
An association of Brazilian health insurance providers sued Stryker, a Michigan corporation that manufactures and distributes medical devices, alleging that Stryker's fraudulent and improper payments to Brazilian doctors increased the cost of providing healthcare. The district court dismissed the case under the doctrine of for um non conveniens *618 , essentially finding that the case should have been brought in Brazil instead of Michigan. Because Stryker did not carry its burden of proving that Brazil is an available and adequate alternative forum in which the case may be heard, we REVERSE and REMAND .
I. BACKGROUND
Associação Brasileira de Medicina de Grupo (Abramge) is a Brazilian nonprofit professional association. Its members are private health insurance providers, many of whom were impacted by a bribery and kickback scandal in the medical device market that broke in the Brazilian media in 2015.
According to Abramge's complaint, Defendant Stryker, a Michigan corporation, masterminded an "illicit scheme, which was planned and run from Michigan, designed to increase its market share by making improper payments and paying bribes and kickbacks to Brazilian doctors to induce the use of Stryker products." On its own and through a wholly owned Brazilian subsidy and other local agents, Stryker allegedly "made improper payments and paid kickbacks to Brazilian doctors with the intent of influencing those doctors to use Stryker devices and products in patients even if those devices were not called for or did not best meet the patients' medical needs." The improper influence Stryker allegedly brought to bear increased the cost of devices as well as the number of devices implanted and surgeries performed; health insurance providers, including members of Abramge, paid for those increases. Abramge claims that Stryker's fraudulent and improper actions injured not only its insurer members, but also the Brazilian public health system as a whole and patients throughout the country.
Abramge filed this suit against Stryker in the Western District of Michigan, claiming fraud, civil conspiracy, tortious interference with contractual relationships, and unjust enrichment. The district court dismissed the suit pursuant to the doctrine of forum non conveniens . Associacao Brasileira de Medicina de Grupo v. Stryker Corp. , No. 1:16-CV-1366, 2017 WL 4535712, at *3 (W.D. Mich. June 28, 2017).
II. ANALYSIS
We review a district court's dismissal for forum non conveniens for abuse of discretion. See Piper Aircraft Co. v. Reyno , 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ; Hefferan v. Ethicon Endo-Surgery Inc ., 828 F.3d 488, 493 (6th Cir. 2016).
Under the common law doctrine of forum non conveniens , "a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." Baumgart v. Fairchild Aircraft Corp. , 981 F.2d 824, 828 (5th Cir. 1993) ; see also Hefferan , 828 F.3d at 492. Given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States , 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), forum non conveniens should be invoked only in "rather rare cases," Gulf Oil Corp. v. Gilbert , 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). This court applies a three-step test to determine whether dismissal is appropriate: "After [1] the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of [2] establishing an adequate alternative forum and [3] showing that the plaintiff's chosen forum is *619 unnecessarily burdensome based on public and private interests." Hefferan , 828 F.3d at 492. We analyze each step in turn.
A. Deference to the Plaintiff's Choice of Forum
When a defendant moves to dismiss on the basis of forum non conveniens , the court must first determine the amount of deference owed to the plaintiff's forum choice based on a "sliding convenience scale." Id. at 494. As the amount of deference owed increases, the strength of the showing necessary to overcome that deference necessarily increases as well.
A U.S. forum is generally presumed to be convenient if a plaintiff is closely connected to the United States; that presumption applies with diminishing force as the plaintiff's connections to the United States weaken or as evidence of forum shopping mounts. See id. at 493-94 ; see also Piper Aircraft , 454 U.S. at 256, 102 S.Ct. 252 (explaining that the assumption of convenience is "less reasonable" when a plaintiff is foreign); Interface Partners Int'l, Ltd. v. Hananel , 575 F.3d 97, 102 & n.9 (1st Cir. 2009) (declining to apply "a presumption of heightened deference" where the U.S. plaintiff had initially filed suit in an Israeli forum and engaged in discovery for nearly four years before dismissing its Israeli case and re-filing in a U.S. forum to gain a tactical advantage); Iragorri v. United Techs. Corp. , 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc) (applying greater deference where the plaintiff's choice of forum is "dictated by reasons that the law recognizes as valid" and less deference where the choice is "motivated by forum-shopping reasons").
That a plaintiff's ties to the United States are weak-or even nonexistent-does not automatically mean that her choice of forum is owed little to no deference. A foreign plaintiff may decide to file suit in the United States because of "a legitimate reason such as convenience or the ability to obtain jurisdiction over the defendants rather than tactical advantage." Hefferan , 828 F.3d at 494 (citing Iragorri , 274 F.3d at 72-73 ). A foreign plaintiff might logically believe that a U.S. forum is the most "convenient" location in which to file her case if she doubts that any other court would be able to exercise jurisdiction over the defendant. In such a case, the deference owed to her choice of forum would increase.
On this preliminary issue, Abramge's choice of forum was given "little deference" on the basis that "Abramge is a foreign plaintiff with minimal connection to the United States, and it is unreasonable to assume that Michigan offers Abramge convenience as a litigation forum." Associacao Brasileira de Medicina de Grupo , 2017 WL 4535712, at *2. Whether Abramge could have had "a legitimate reason" to sue in Michigan-in this case, to ensure personal jurisdiction over Stryker-was not addressed. See Hefferan , 828 F.3d at 494. It is correct, however, that because Abramge is a foreign plaintiff, the presumption of convenience applies with less force. See Piper Aircraft , 454 U.S. at 256, 102 S.Ct. 252. Thus, the analysis of the first prong did not amount to an abuse of discretion.
B. Alternative Forum
The second step in the forum non conveniens analysis is to determine whether "the claim can be heard in an available and adequate alternative forum." DRFP, L.L.C. v. Republica Bolivariana de Venez. , 622 F.3d 513, 518 (6th Cir. 2010) (quoting Duha v. Agrium, Inc. , 448 F.3d 867, 873 (6th Cir. 2006) ).
It bears emphasizing that identifying an alternate forum is a prerequisite *620 for dismissal, not a factor to be balanced. If there is no suitable alternate forum where the case can proceed, the entire inquiry ends. See Gulf Oil , 330 U.S. at 506-07, 67 S.Ct. 839 ("[T]he doctrine of forum non conveniens ... presupposes at least two forums in which the defendant is amenable to process...."); Watson v. Merrell Dow Pharm., Inc. , 769 F.2d 354, 357 (6th Cir. 1985) (reversing a forum non conveniens dismissal that impermissibly intermingled "the threshold criteria with the subsequent balancing test"). As the Tenth Circuit put it, "[s]ometimes an inconvenient forum is the only available forum." Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd. , 703 F.3d 488, 495 (10th Cir. 2012).
An alternative forum is ordinarily considered to be available "when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft , 454 U.S. at 254 n.22, 102 S.Ct. 252 (quoting Gulf Oil , 330 U.S. at 506-07, 67 S.Ct. 839 ); see also Wong v. PartyGaming, Ltd ., 589 F.3d 821, 831 (6th Cir. 2009). However, a foreign forum is not truly "available"-and a defendant is not meaningfully "amenable to process" there-if the foreign court cannot exercise jurisdiction over both parties. See Watson , 769 F.2d at 357. Similarly, the foreign forum is not adequate if the remedy it offers "is so clearly inadequate or unsatisfactory that it is no remedy at all," as, for example, if the other forum "does not permit litigation of the subject matter of the dispute." Piper Aircraft , 454 U.S. at 254 & n.22, 102 S.Ct. 252. An alternative forum, however, is not inadequate merely because its substantive law is different or less favorable to the plaintiff than that of the U.S. forum. Id. at 247, 102 S.Ct. 252.
The defendant bears the burden of identifying an alternative forum that meets these criteria. Hefferan , 828 F.3d at 492. Our past decisions make clear that the nature of the showing required to carry the burden depends on the nature of the case at hand. In particularly clear cases, pleadings and preliminary submissions alone may suffice. For example, in Wong v. PartyGaming, Ltd ., no outside evidence was required to confirm that Gibraltar courts were available to settle a suit against a Gibraltar corporation with its principal place of business in Gibraltar and whose agreement with the plaintiff contained a Gibraltar forum selection clause. 589 F.3d at 831. In Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide , 545 F.3d 357 (6th Cir. 2008), a case involving a fatal rental car crash in South Africa, no recourse to expert testimony was required. Instead, the defendant car rental company explained that the proper defendants were a set of South African corporations, some of which were named in the car rental contract, that were permitted under a license agreement to use its name. Id. at 365. We had no trouble concluding that those South African corporations would be amenable to process in South Africa. Id.
More frequently, defendants have carried their burden by submitting expert evidence showing that a particular foreign court will be able to exercise jurisdiction over the parties and the subject matter. In Solari v. Goodyear Tire & Rubber Co. , a battle of the experts was won by the defendant's expert, a former justice of the French Supreme Court, who testified as to why French courts would have both personal and subject matter jurisdiction over the case. 654 Fed.Appx. 763, 767 (6th Cir. 2016). In Hefferan , the jurisdiction of German courts was not at issue on appeal, 828 F.3d at 495, presumably because in the district court, the defendants had provided an affidavit by a German lawyer explaining that a particular German regional court had jurisdiction over the claim.
*621 No. 1:14-CV-911, 2015 WL 2169689, at *3 & n.3 (S.D. Ohio May 8, 2015). In Dowling v. Richardson-Merrell, Inc. , the plaintiff's expert, a Scottish solicitor, unwittingly provided the evidence that the defendant required, explaining that Scottish and English courts would be able to hear the dispute only if certain conditions were met. 727 F.2d 608, 612 (6th Cir. 1984). We affirmed the district court but conditioned the forum non conveniens dismissal on the satisfaction of those and other conditions. Id. at 611, 616.
In the present case, it is not obvious from the pleadings alone that a Brazilian court will be able to exercise jurisdiction over the defendant and offer a satisfactory remedy. First, there is no obvious jurisdictional hook to bring Stryker into a Brazilian court. Stryker is not, for example, a Brazilian corporation. See Wong , 589 F.3d at 831 ; Estate of Thomson , 545 F.3d at 365. Because Stryker filed a motion to dismiss in lieu of an answer, we do not know if Stryker admits any connections to Brazil. Second, we do not know whether the remedy offered by Brazilian courts to parties facing the type of harm Abramge alleges "is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft , 454 U.S. at 254, 102 S.Ct. 252. Abramge puts forward relatively complex theories of corporate and vicarious liability based on fraudulent misrepresentation and tortious interference with contracts; we do not know if Brazilian courts recognize comparable causes of actions or will otherwise prove able to provide a remedy for the alleged harm.
Stryker argues that it carried its burden in the district court by showing that Brazil is an available and adequate alternative forum. Stryker's argument is based on a single line in its reply brief in support of its motion to dismiss: "Additionally, Stryker consents to jurisdiction in Brazil, so Brazil is an available forum." This lone statement does not suffice to carry Stryker's burden for two reasons.
First, an attorney's statement in a brief is not evidence. See Duha , 448 F.3d at 879. Consents to jurisdiction or representations that a party is amenable to process in a foreign country are normally made in an affidavit or other declaration by the party so consenting. See, e.g. , Fischer v. Magyar Allamvasutak Zrt. , 777 F.3d 847, 867 (7th Cir. 2015) (declaration of an Austrian bank's chief legal officer consenting to jurisdiction in Hungary); Jiali Tang v. Synutra Int'l, Inc. , 656 F.3d 242, 250 (4th Cir. 2011) (affidavits that the defendant would not contest service of process in China). Not only are affidavits and declarations evidence that a court may properly rely on, but the signatories are legally bound by the contents of their sworn documents. Whether an attorney's statement is binding on a client, on the other hand, is-at least in U.S. courts-a matter of agency doctrine, binding only if the statement is made within the scope of the attorney's authority and without contradiction by the client. See United States v. Johnson , 752 F.2d 206, 210-11 (6th Cir. 1985).
Second, Stryker has provided no evidence that its consent to jurisdiction in Brazil would be legally meaningful even if it were presented in a proper evidentiary form. By way of analogy, a party's consent to a federal court's jurisdiction over her state-law claim worth $50,000 would not be legally meaningful; regardless of her consent, the federal court would be unable to hear the case for lack of subject-matter jurisdiction. See 28 U.S.C. § 1332. On the record before us, we do not know if Abramge can prove (or if Stryker admits) that Stryker has any connection to Brazil, nor do we know if Brazilian courts permit litigation over this subject matter. Without *622 guidance from Brazilian legal experts or even citations to Brazilian law or treatises, we do not know whether Brazil's personal and subject-matter jurisdiction requirements could be satisfied on the facts alleged here. Stryker must point to some evidence in the record indicating that Brazil truly is "available," lest Abramge be left without a forum in which to press its case. See Deb v. SIRVA, Inc. , 832 F.3d 800, 813 (7th Cir. 2016) ; Solari , 654 Fed.Appx. at 767 ; Estate of Thomson , 545 F.3d at 365 ; see also, e.g. , Kamel v. Hill-Rom Co. , 108 F.3d 799, 803 (7th Cir. 1997) (relying in part on an expert affidavit explaining that Saudi law recognizes consents to jurisdiction).
In sum, Stryker's attorney-drafted statement lacks evidentiary weight, and no evidence in the record establishes that Brazilian courts would be able to exercise jurisdiction over these parties and this subject matter, or to provide a satisfactory remedy. Stryker failed to carry its burden, and it was an abuse of discretion to rely on Stryker's purported consent and dismiss the case. Because identifying an available and adequate alternative forum is a necessary prerequisite for forum non conveniens dismissal, we need not address the final step of the forum non conveniens analysis, the balance of the public and private interest factors.
III. CONCLUSION
For the foregoing reasons, we REVERSE the district court's dismissal for forum non conveniens and REMAND the case for further proceedings consistent with this opinion. Although dismissal was not warranted on this bare record, Stryker may refile its motion with supporting documents on remand.