******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH DECICCO, ADMINISTRATOR (ESTATE OF
NANCY LOYD OLAIVAR ABAD), ET AL. *v.*
DYNATA, LLC, ET AL.
(AC 45862)

Alvord, Elgo and Seeley, Js.

*Syllabus*

The plaintiffs commenced this action against the defendants, D Co. and
certain officers of D Co., to recover damages for the wrongful death of
twenty-nine adults who died as a result of a four-story building fire in
Davao City, Philippines. The fire occurred at a call center where the
decedents worked as employees of S Co. The officers of D Co. were
also directors and shareholders of S Co. On or before the date of the
incident, D Co., whose principal place of business was in Shelton, had
secured contracts in the United States to perform work and to provide
reports and data to its United States based clients on the basis of that
work. D Co. outsourced certain of the work to S Co., specifically, to
provide telephone, survey, polling, and data collection services from
call centers in the Philippines. The defendants filed a motion to dismiss
the plaintiffs' complaint on the ground of forum non conveniens, arguing
that the Philippines was an adequate alternative forum to litigate the
matter because the defendants were amenable to service of process,
had stipulated to accept service of process and had agreed to litigate
the dispute in the Philippines. The trial court granted the defendants'
motion to dismiss, finding that the Philippines was an adequate alterna-
tive forum, and the plaintiffs appealed to this court. *Held*:

1. The plaintiffs could not prevail on their claim that the trial court applied
the wrong test, namely, "that consent may be used as a substitute for
jurisdiction," to determine whether the Philippines was an adequate
alternative forum: the plaintiffs misinterpreted the court's decision, as
a proper interpretation of the court's memorandum of decision was that
the court used the test enunciated in *Schertenleib* v. *Traum* (589 F.2d
1156) to support its determination that the Philippines was a suitable
forum notwithstanding competing expert testimony regarding whether
the action was barred in the Philippines by the statute of limitations;
moreover, the court correctly relied on *Picketts* v. *International Playtex,
Inc.* (215 Conn. 490) to determine that the Philippines was an adequate
alternative forum because the defendants were amenable to service of
process in the Philippines and the Philippines was a suitable forum
considering the competing expert testimony regarding whether the
action was barred in the Philippines by the statute of limitations; further-
more, the court left open the possibility that the case could be restored to
the docket if a Philippine court dismissed the case for lack of jurisdiction.

2. The plaintiffs could not prevail on their claim that the trial court improperly dismissed the case on the ground of forum non conveniens: the court did not abuse its discretion in applying *Picketts* in finding that, because the defendants agreed to accept service and litigate in the Philippines, they were amenable to service there; moreover, the court necessarily recognized the bipolarity of the parties' competing expert affidavits regarding whether the statute of limitations barred the plaintiffs from bringing the action in the Philippines in determining that the Philippines was an adequate alternative forum; furthermore, it was evident that the court had a justifiable belief that the plaintiffs could bring the action in the Philippines, such that the court's decision to grant the motion to dismiss on a conditional basis did not constitute an abuse of its discretion.

Argued March 5—officially released June 4, 2024

*Procedural History*

Action to recover damages for the wrongful death of the plaintiffs' decedents as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury, and transferred to the Complex Litigation Docket, where the court, *Bellis*, *J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Michael S. Taylor*, with whom were *Brendon P. Levesque*, and, on the brief, *Eric P. Anderson, Corinne A. Burlingham, Welsen T. Chu*, pro hac vice, and *Thomas P. Routh*, pro hac vice, for the appellants (plaintiffs).

*Scott Stirling*, pro hac vice, with whom, on the brief, were *James E. Nealon*, and *Edward P. Gibbons*, pro hac vice, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiffs, Attorney Joseph DeCicco, administrator of the estates of twenty-nine Philippine citizens,[1] Jehmar Bongcayao, Mostes B. Castillo, Sylvester B. Celades, Guidhavio C. Garzon, Jexter D. Generales, and Cecilline Sismar, appeal from the judgment of

[1] The twenty-nine deceased individuals, who are named as parties via their estates, are Nancy Loyd Olaivar Abad, Ian Kiem Porras Adlawan, Christine Cajes Alviola, Rodderick Cutay Antipuesto, Shiela Mae Anod Baca-

the trial court granting the motion of the defendants, Dynata, LLC (Dynata), Christopher Mark Fanning, and David Ian Weatherseed, to dismiss the plaintiffs' complaint on the ground of forum non conveniens. On appeal, the plaintiffs claim that the court (1) applied the wrong test to determine whether the Philippines was an adequate alternative forum, and (2) improperly dismissed this case on the ground of forum non conveniens. We disagree and, accordingly, affirm the judgment of the court.

The following facts, as alleged in the plaintiffs' operative complaint, dated August 28, 2020, and procedural history are relevant to the resolution of this appeal. The plaintiffs commenced this action to recover damages for the wrongful death of twenty-nine adults who died on December 23, 2017, from carbon monoxide poisoning and asphyxiation followed by severe postmortem burns and charring, as a result of a four-story building fire in Davao City, Philippines. The fire occurred at a call center where the twenty-nine decedents worked as employees of SSI Philippines, Inc. (SSI Philippines).[2] On or before December 23, 2017, Dynata, a limited liability company with its principal place of business in Shelton, Connecticut, had secured contracts in the United States to perform work and to provide reports and data to its United States based clients on the basis of that work. Dynata outsourced the contract work to SSI Philippines

ling, Randy Balando Balcao, Kurtchin Angela Yumo Bangoy, Jonas Oroyan Basalan, Mary Louielyn Maningo Bongcayao, Alexander May Moreno Castillo, Apple Jane Abes Celades, Antioco Esguerra Celestial, Jr., Roderick Cabugsa Constantinopla, Mikko Salazar Demafeliz, Christen Joy Ibañez Garzon, Regine Alcano Generales, Jimbo Lupos Limosnero, Charlyn Relacion Liwaya, Johanie Undagan Matondo, Rosyl Chavez Montañez, Rhenzi Nova Duco Muyco, Janine Joy Culipapa Obo, Joyne Ramayla Pabelonia, Analiza Mosquera Peñarijo, Jim Benedict Sazon Quimsing, Ivan Nebelle Limosnero Roble, Jeffrey Cabantingan Sismar, Ellen Joy Dawa Yorsua, and Desiree Gayle Aperocho Zacarias. The remaining plaintiffs are the surviving spouses of the decedents.

[2] SSI Philippines, Inc., is not a party in this action.

to provide telephone, survey, polling, and data collection services from call centers in the Philippines. In December, 2017, Fanning was the president and chief executive officer of Dynata and a director and shareholder of SSI Philippines, and Weatherseed was the controller of Dynata and a director and shareholder of SSI Philippines.

In December, 2019, the plaintiffs commenced this action against the defendants. The operative complaint alleges ten counts of wrongful death and loss of consortium claims under theories of direct negligence and vicarious liability due to agency and joint venture relationships.

On March 20, 2020, the defendants filed a motion to dismiss the plaintiffs' complaint on the ground of forum non conveniens, an accompanying memorandum of law in support of their motion, and an appended exhibit. The defendants also submitted the affidavit of Francisco Edralin Lim, a law professor and attorney admitted to the Philippine bar, with additional exhibits. In their memorandum of law, the defendants argued, inter alia, that the Philippines is an adequate alternative forum because the defendants (1) are amenable to service of process in the Philippines, (2) have stipulated to accept service of process in the Philippines, and (3) have agreed to litigate this dispute in the Philippines. Lim averred that under Philippine law "several fora exist" in the Philippines for the plaintiffs to bring this action.

On March 28, 2022, the plaintiffs filed a memorandum of law in opposition to the defendants' motion to dismiss with appended exhibits. Further, the plaintiffs submitted the affidavit of Elizabeth Aguiling Pangalangan, a law professor and attorney admitted to the Philippine bar. The plaintiffs argued, and Pangalangan averred, inter alia, that the Philippines is not an adequate alternative forum because this action would be barred by the

statute of limitations, and, thus, a Philippine court sua sponte would dismiss the plaintiffs' action.

Thereafter, the defendants filed a reply memorandum in further support of their motion to dismiss and submitted a supplemental affidavit from Lim. The defendants maintained that "the statute of limitations in the Philippines has not expired, and neither the defendants nor the court sua sponte could raise the statute of limitations as a defense." The defendants challenged Pangalangan's averments that a court sua sponte would dismiss the case as barred by the statute of limitations and relied on Lim's averment that a Philippine court would recognize the defendants' affirmative waiver of the statute of limitations and hear the plaintiffs' action.

The plaintiffs filed a motion to strike Lim's supplemental affidavit, arguing, inter alia, that it contained incorrect recitations of Philippine law. The defendants filed a memorandum in opposition to the plaintiffs' motion to strike, and the plaintiffs filed a reply. A hearing on the defendants' motion to dismiss and the plaintiffs' motion to strike was held before the court, *Bellis, J.*, on July 20, 2022. The court denied the plaintiffs' motion to strike on September 12, 2022, stating in relevant part: "[T]he primary argument advanced by the plaintiffs in their motion to strike is that the defendants' expert is incorrect in his analysis of Philippine law. As this court is not nearly as well equipped as a Philippine court to resolve issues of Philippine law, and the court is already dismissing the case on forum non conveniens . . . the court will allow the affidavit to remain in the record for the purposes of a potential appeal. Therefore, the motion to strike is denied."[3]

That same day, the court issued a memorandum of decision on the defendants' motion to dismiss. The

---

[3] There are no claims on appeal regarding the court's ruling on the motion to strike.

court applied our Supreme Court's decision in *Durkin* v. *Intevac, Inc.*, 258 Conn. 454, 782 A.2d 103 (2001), which sets forth the following four step process for consideration by the court of a forum non conveniens motion to dismiss: (1) "whether an adequate alternative forum exists that possesses jurisdiction over the whole case"; (2) "all relevant private interest factors with a strong presumption in favor of—or, in the present case, a weakened presumption against disturbing—the plaintiffs' initial choice of forum"; (3) "if the balance of private interest factors is equal, the court should consider whether any public interest factors tip the balance in favor of trying the case in the foreign forum"; and (4) "if the public interest factors tip the balance in favor of trying the case in the foreign forum, the court must . . . ensure that [the] plaintiffs can reinstate their [action] in the alternative forum without undue inconvenience or prejudice." (Internal quotation marks omitted.) Id., 466.

In determining that the Philippines was an adequate alternative forum, the court stated in relevant part: "In the present matter, the defendants have agreed to accept service and litigate in the Philippines. Nevertheless, the parties' experts disagree on whether the defendants are subject to jurisdiction in the Philippines. In his affidavit . . . Lim . . . contended that an action of this nature can be brought in the Philippines. Lim cited to Article 35 of the Philippines Code, which recognizes civil liability arising from a criminal act and Article 2176, which allows civil liability arising from fault or negligence under the concept of quasi-delicts. Further, Lim testified that the December 17, 2018 investigation resolution stated that the vicarious liability of the corporations among others 'can be better threshed out in a separate civil suit between the parties.'

"Nevertheless, the plaintiffs produced an affidavit from . . . Pangalangan . . . which asserts that the

Philippine court would have a duty to dismiss this action if it were filed in the Philippines because it is barred by the statute of limitations, even if the defendants represent that they will waive any applicable statute of limitations in the Philippines. Pangalangan also testified that the Philippine court will dismiss this case pursuant to its doctrine of forum non conveniens because Dynata is an American corporation with its principal place of business in Connecticut.

"In Lim's reply affidavit, he stated that the statute of limitations has not expired because it was paused when this case was filed in Connecticut and will only begin running again if Connecticut dismisses the case. Additionally, he stated that under Philippine law, a party can waive a defense and voluntarily expose itself to a lawsuit. Further, the defendants have agreed to litigate in the Philippines, therefore, they would not invoke the doctrine of forum non conveniens to then dismiss the case in the Philippines.

"In *Schertenleib* v. *Traum*, 589 F.2d 1156 (2d Cir. 1978), the Second Circuit Court of Appeals was faced with a similar issue where the district court, in deciding whether dismissal was warranted on forum non conveniens grounds, received conflicting expert opinions regarding whether the foreign court had jurisdiction over the matter. The Second Circuit ultimately dismissed the case on the condition that the defendants would consent to jurisdiction in the foreign court and if the case was dismissed from the foreign court, the plaintiffs could move to restore the action in the American court. Id., 1166. The court stated that, '[w]hen the alternative forum is foreign, particularly where . . . it is a civil law country, our courts have difficulty discerning whether a non-resident defendant really would be subject to jurisdiction in the foreign country without his consent. Indeed, the court may receive conflicting expert opinions on this issue. If the defendant consents

to suit in the foreign alternate forum, and if that appears to be sufficient under the foreign law, why waste the litigants' money and the court's time in what is essentially an unnecessary and difficult inquiry into the further intricacies of foreign jurisdictional law?' Id., 1163. Similarly, here, the defendants have agreed to submit to jurisdiction in the Philippines. While there is conflicting evidence as to whether that is sufficient for the Philippine court to take jurisdiction, the court finds that the Philippine court is an adequate alternative forum. Accordingly, the court may dismiss this case on forum non conveniens grounds because it finds that the Philippines is an adequate alternative forum, the defendants have agreed to jurisdiction there, and, in the event that the Philippine court dismisses the case for lack of jurisdiction, the plaintiffs can move to restore the action in this court." The court, after applying the remaining *Durkin* factors, granted the defendants' motion to dismiss. This appeal followed.

Before turning to the claims on appeal, we first recognize "the four step process for examining forum non conveniens claims outlined in *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. [501, 508–509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)], and clearly set forth in *Pain* v. *United Technologies Corp.*, 637 F.2d 775, 784–85 (D.C. Cir. 1980), cert. denied, 454 U.S. 1128, 102 S. Ct. 980, 71 L. Ed. 2d 116 (1981), which [our Supreme Court has] stated is a useful frame of reference for the law of Connecticut. . . . First, the court should determine whether an adequate alternative forum exists that possesses jurisdiction over the whole case. . . . Second, the court should consider all relevant private interest factors with a strong presumption in favor of—or, in the present case, a weakened presumption against disturbing—the plaintiffs' initial choice of forum. . . . Third, if the balance of private interest factors is equal, the court should consider whether any public interest factors tip the balance

in favor of trying the case in the foreign forum. . . . Finally, if the public interest factors tip the balance in favor of trying the case in the foreign forum, the court must . . . ensure that [the] plaintiffs can reinstate their [action] in the alternative forum without undue inconvenience or prejudice." (Citations omitted; internal quotation marks omitted.) *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 466.

I

The plaintiffs first claim on appeal that "the trial court applied the wrong test to determine whether the Philippines was an adequate alternative forum." Specifically, the plaintiffs argue that the court adopted a rule "that consent may be used as a substitute for jurisdiction," and that such a rule "has never been adopted, so far as the plaintiffs can ascertain, by any court in Connecticut (or by a court applying Connecticut law)." We disagree with the plaintiffs that the court applied the wrong test and instead conclude that the plaintiffs' claim fails because it rests on a misinterpretation of the trial court's decision.

We begin our analysis with the applicable standard of review. Resolution of this claim "requires us to interpret the court's memorandum of decision. The construction of a judgment is a question of law for the court, such that our review of the [plaintiffs'] claim is plenary." (Internal quotation marks omitted.) *In re Jacquelyn W.*, 169 Conn. App. 233, 241, 150 A.3d 692 (2016). "As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The

judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Windham* v. *Doctor's Associates, Inc.*, 161 Conn. App. 348, 356, 127 A.3d 1082 (2015).

In the present case, the plaintiffs argue that the court misapplied the relevant legal standard and "applied the wrong test to determine whether the Philippines was an adequate alternative forum." The plaintiffs maintain that the court improperly relied on *Schertenleib* v. *Traum*, supra, 589 F.2d 1156, as support for what the plaintiffs contend constituted a determination that the defendants' consent to jurisdiction in the Philippines is sufficient to satisfy the adequate alternative forum requirement. In response, the defendants contend that the plaintiffs' argument "misunderstands both the trial court's analysis and the proper analysis of an adequate alternative forum." We agree with the defendants.

We are not persuaded that the court's reliance on *Schertenlieb* as support for its determination that the Philippines is a suitable forum improperly created a rule that "consent may be used as a substitute for jurisdiction . . . ." The court's memorandum of decision makes clear that *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 254 n.22, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), and *Picketts* v. *International Playtex, Inc.*, 215 Conn. 490, 504 n.13, 576 A.2d 518 (1990), guided its determination that the Philippines is an adequate alternative forum and quoted language from *Picketts* on the doctrine of forum non conveniens. "Ordinarily, the alternative forum prerequisite will be satisfied simply if the defendants are amenable to service in another jurisdiction. *Piper Aircraft Co.* v. *Reyno*, supra, [254 n.22]; *Gulf Oil* [*Corp.*] *v. Gilbert*, supra, [330 U.S. 506–507]. The United States Supreme Court, however, has identified at least some instances in which mechanical inquiry into the amenability of process in the other forum must

surrender to a more meaningful assessment of the *suitability* of the alternative forum. In *Piper Aircraft Co.* v. *Reyno*, supra, [254 n.22] the United States Supreme Court noted that, in rare circumstances, where the remedy offered by the other forum is clearly unsatisfactory, such as where the alternative forum does not permit any litigation of the subject matter of the legal controversy, the other forum may not meet the threshold requirement of an adequate alternative." (Emphasis in original.) *Picketts* v. *International Playtex, Inc.*, supra, 504 n.13.

With respect to the standard inquiry, the court found that, "[i]n the present matter, the defendants have agreed to accept service and litigate in the Philippines." The court then proceeded to perform "a more meaningful assessment of the suitability of the alternative forum." (Emphasis omitted.) *Picketts* v. *International Playtex, Inc.*, supra, 215 Conn. 504 n.13. The court considered the Lim and Pangalangan affidavits, which provided conflicting testimony as to whether a Philippine court would dismiss this case as barred by the statute of limitations. The court relied on *Schertenleib*, which it described as another case in which "the district court, in deciding whether dismissal was warranted on forum non conveniens grounds, received conflicting expert opinions regarding whether the foreign court had jurisdiction over the matter." The court in the present case reasoned: "The Second Circuit ultimately dismissed the case on the condition that the defendants would consent to jurisdiction in the foreign court and if the case was dismissed from the foreign court, the plaintiffs could move to restore the action in the American court. [*Schertenleib* v. *Traum*, supra, 589 F.2d 1166]. The court stated that, '[w]hen the alternative forum is foreign, particularly where . . . it is a civil law country, our courts have difficulty discerning whether a non-resident defendant really would be subject to jurisdiction in the

foreign country without his consent. Indeed, the court may receive conflicting expert opinions on this issue. If the defendant consents to suit in the foreign alternate forum, and if that appears to be sufficient under the foreign law, why waste the litigants' money and the court's time in what is essentially an unnecessary and difficult inquiry into the further intricacies of foreign jurisdictional law?' Id., 1163. Similarly, here, the defendants have agreed to submit to jurisdiction in the Philippines. While there is conflicting evidence as to whether that is sufficient for the Philippine court to take jurisdiction, the court finds that the Philippine court is an adequate alternative forum."

Accordingly, the court's reliance on *Schertenleib* does not, as the plaintiffs contend, create a new test that "consent may be used as a substitute for jurisdiction . . . ." Rather, a proper interpretation of the court's memorandum of decision is that the court used *Schertenleib* to support its determination that the Philippines is a suitable forum notwithstanding the competing expert testimony regarding whether this action is barred in the Philippines by the statute of limitations. The court correctly relied on *Picketts* v. *International Playtex, Inc.*, supra, 215 Conn. 504 n.13, to determine that the Philippines is an adequate alternative forum because (1) the defendants are amenable to service of process in the Philippines and, (2) the Philippines is a suitable forum considering the competing expert testimony regarding whether this action is barred in the Philippines by the statute of limitations. Finally, the court left open the possibility that the present case could be restored to the docket if a Philippine court dismisses the case for lack of jurisdiction. Thus, the court in no way concluded that consent to suit can overcome a lack of jurisdiction. We conclude, therefore,

that the plaintiffs misinterpreted the court's memorandum of decision. Accordingly, we reject the plaintiffs' claim.[4]

## II

The plaintiffs' second claim on appeal is that the court improperly dismissed the case on the ground of forum non conveniens. The plaintiffs argue that, assuming it applied the correct legal test, the court nonetheless improperly found that the Philippines is an adequate alternative forum because "there is conflicting evidence on whether the defendants could be sued at all in the Philippines, and on the effect of the statute of limitations." We disagree.

"We begin with the applicable standard of review and the well established legal principles that guide our analysis of the defendants' claim. A ruling on a motion to dismiss for forum non conveniens is reviewed under an abuse of discretion standard. . . . As a common law matter, the doctrine of forum non conveniens vests

---

[4] The plaintiffs' claims on appeal are limited to challenging the court's determination that the Philippines is an adequate alternative forum. Nevertheless, the plaintiffs make a passing statement in their principal appellate brief that "[t]he balance of interests must favor the plaintiffs' choice, as the 'central principle of the forum non conveniens doctrine [is] that unless the balance is strongly in favor of the defendant[s], the [plaintiffs'] choice of forum should rarely be disturbed.' *Durkin* [v. *Intevac, Inc.*, supra, 258 Conn. 464]." (Emphasis omitted.) In the forum non conveniens analysis, the balancing of the private and public interests occurs only *after* a court has determined that an adequate alternative forum exists. See *Schertenleib* v. *Traum*, supra, 589 F.2d 1159–60 (proving adequate alternative forum is "a prerequisite for application of forum non conveniens"); see also *Durkin* v. *Intevac, Inc.*, supra, 466 (second and third step of forum non conveniens analysis is balancing private and public interest factors). In this appeal, the plaintiffs do not claim that the court abused its discretion in analyzing the private and public interest factors after making its determination that the Philippines is an adequate alternative forum. Accordingly, we deem any claim related to the court's balancing of interests abandoned. See, e.g., *Maurice* v. *Chester Housing Associates Ltd. Partnership*, 189 Conn. App. 754, 756 n.1, 208 A.3d 691 (2019) (claim merely raised in passing, deemed abandoned).

discretion in the trial court to decide where trial will best serve the convenience of the parties and the ends of justice. . . . In our application of the abuse of discretion standard, we must accept the proposition that simply to disagree with the [trial] court as if the facts had been presented to this court in the first instance cannot be the basis of our decision. . . . [T]he trial court's exercise of its discretion may be reversed only upon a showing of clear abuse. [W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. . . . Meaningful review, even from this circumscribed perspective, nonetheless encompasses a determination whether the trial court abused its discretion as to either the facts or the law. . . .

"Emphasis on the trial court's discretion does not, however, overshadow the central principle of the forum non conveniens doctrine that unless the balance is strongly in favor of the defendant[s], the [plaintiffs'] choice of forum should rarely be disturbed. . . . Although it would be inappropriate to invoke [a] rigid rule to govern discretion . . . it bears emphasis that invocation of the doctrine of forum non conveniens is a drastic remedy . . . which the trial court must approach with caution and restraint. The trial court does not have unchecked discretion to dismiss cases from [the plaintiffs'] chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff[s]. . . . Although a trial court applying the doctrine of forum non conveniens must walk a delicate line to avoid implicitly sanctioning forum-shopping by either litigant at the expense of the other . . . it cannot exercise its discretion in order to level the playing field between the parties. The [plaintiffs'] choice of forum, which may well have been chosen precisely because it provides the plaintiff[s] with

certain procedural or substantive advantages, should be respected unless equity weighs strongly in favor of the defendant[s]. . . .

"[T]he overriding inquiry in a forum non conveniens motion is not whether some other forum might be a good one, or even a better one than the [plaintiffs'] chosen forum. The question to be answered is whether [the plaintiffs'] chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved. . . . Accordingly, the trial court, in exercising its structured discretion, should place its thumb firmly on the [plaintiffs'] side of the scale, as a representation of the strong presumption in favor of the [plaintiffs'] chosen forum, before attempting to balance the private and public interest factors relevant to a forum non conveniens motion.

"When, as in the present action, the plaintiffs are foreign to their chosen forum, the trial court must readjust the downward pressure of its thumb, but not remove it altogether from the plaintiffs' side of the scale. Even though the plaintiffs' preference has a diminished impact because the plaintiffs are themselves strangers to their chosen forum . . . Connecticut continues to have a responsibility to those foreign plaintiffs who properly invoke the jurisdiction of this forum . . . especially in the somewhat unusual [situation in which] it is the forum resident who seeks dismissal. . . . [Therefore] [w]hile the weight to be given to the choice of a domestic forum by foreign plaintiffs is diminished, their entitlement to a preference does not disappear entirely. The defendants challenging the propriety of this choice continue to bear the burden to demonstrate why the presumption in favor of [the plaintiffs'] choice, weakened though it may be, should be disturbed." (Citations omitted; internal quotation marks omitted.) *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 463–65.

"[A] defendant has the burden of establishing that an adequate alternative forum exists and that the relevant factors favor litigating in the alternative forum. . . . If a defendant fails to carry this burden, the forum non conveniens motion must be denied regardless of the degree of deference accorded [the] plaintiff's forum choice. . . . An alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute. . . . It is well established that an alternative forum need not have identical causes of actions or remedies—or, more generally, law as favorable to the plaintiff's chance of recovery as the chosen forum—to be adequate. . . . However, a forum may be inadequate if the remedy it offers is so clearly inadequate or unsatisfactory that it is no remedy at all . . . or if there is a complete absence of due process or an inability . . . to provide substantial justice to the parties in the alternative forum . . . ." (Citations omitted; internal quotation marks omitted.) *Owens* v. *Turkiye Halk Bankasi A.S.*, United States Court of Appeals, Docket No. 21-610-cv (2d Cir. May 2, 2023), cert. denied, U.S. , 144 S. Ct. 551, 217 L. Ed. 2d 293 (2024).

Our resolution of this claim on appeal requires us to consider whether the court abused its discretion in applying *Picketts* v. *International Playtex, Inc.*, supra, 215 Conn. 504 n.13, to reach the conclusion that the Philippines is an adequate alternative forum. The court determined that (1) the defendants are amenable to service of process in the Philippines, and (2) notwithstanding the disagreement of the parties' experts as to whether the Philippines has subject matter jurisdiction over this action, the Philippines is a suitable forum to litigate this case.

As to the first inquiry of *Picketts*, the plaintiffs contend that "there is conflicting evidence on whether the defendants could be sued at all in the Philippines . . . ."

In the present case, the defendants stipulated, inter alia, that "upon dismissal of this suit, they will: (1) consent to jurisdiction in the Philippines; [and] (2) accept service of process in connection with an action in the Philippines . . . ." Additionally, the defendants "consent[ed] to the reopening of the action in Connecticut in the event the above conditions are not met as to any proper defendant in this action." The defendants' stipulation in the present case mirrors that in *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 481 n.23, wherein the defendants stipulated, inter alia, that they "agreed to: (1) consent to jurisdiction in [the foreign jurisdiction]; (2) accept service of process in connection with an action in [the foreign jurisdiction] . . . and (6) consent to the reopening of the action in Connecticut in the event the above conditions are not met as to any proper defendant in this action." (Internal quotation marks omitted.)

A court does not abuse its discretion in finding that a defendant's representation that it will accept service in the alternative forum is sufficient to show that the defendant is amenable to service in that forum. See, e.g., *Wamai* v. *Industrial Bank of Korea*, United States Court of Appeals, Docket No. 21-1956-cv (2d Cir. March 8, 2023) (defendant's "agreement to accept service in Korea, to submit to the jurisdiction of the Korean courts, and to waive any statute of limitations defenses that may have arisen since the filing of these actions" was sufficient to show amenable to service), cert. denied, U.S. , 144 S. Ct. 552, 217 L. Ed. 2d 294 (2024); *Carney* v. *Beracha*, 996 F. Supp. 2d 56, 72 (D. Conn. 2014) (defendants' statement that they are amenable to suit in Venezuela was sufficient). We, therefore, disagree with the plaintiffs' contention that "it is not clear that the defendants are amenable to service in the Philippines." Rather, the court properly determined that because "the defendants have agreed to accept service

and litigate in the Philippines," they are amenable to service there.

As to the second inquiry of *Picketts*—whether the Philippines is a suitable forum—the plaintiffs argue, inter alia, that the court incorrectly concluded that a Philippine court would have jurisdiction. In support of this contention, the plaintiffs rely on *Norex Petroleum Ltd.* v. *Access Industries, Inc.*, 416 F.3d 146, 159 (2d Cir. 2005), cert. denied, 547 U.S. 1175, 126 S. Ct. 2320, 164 L. Ed. 2d 860 (2006) (*Norex*), for the proposition that "such a finding [that a foreign jurisdiction is capable of hearing the merits of a claim] is impossible where an action that can be maintained in the United States is foreclosed in the foreign jurisdiction . . . an adequate forum does not exist if a statute of limitations bars the bringing of [a] case in a foreign forum that would be timely in the United States." (Emphasis omitted; internal quotation marks omitted.)

*Norex*, however, is factually distinguishable from the present case because the court determined that the "defendants failed to carry their burden to demonstrate that Russia affords [the] plaintiff a presently available adequate alternative forum . . . ." Id., 160. In reaching this conclusion, the court was provided with "[e]xpert opinions from both sides reveal[ing] that Russian courts would likely deem the core issues underlying [the] plaintiff's claims largely precluded . . . ." Id., 159. In the present case, the parties submitted to the court conflicting expert affidavits regarding whether the statute of limitations bars the plaintiffs from bringing this action in the Philippines. Specifically, Lim averred that a Philippine court would have jurisdiction over this action, whereas Pangalangan averred that a court sua sponte would dismiss this action as barred by the statute of limitations. In determining that the Philippines is a suitable forum to litigate this case, the court necessarily recognized the bipolarity of the expert opinions and

stated that, notwithstanding the "conflicting evidence as to whether [agreement to submit to jurisdiction] is sufficient for the Philippine court to take jurisdiction, the court finds that the Philippine court is an adequate alternative forum."

The United States Court of Appeals for the Second Circuit has observed that a trial court does not abuse its discretion when it considers the parties' competing expert testimony to assist in determining whether an alternative forum is suitable. See *Wamai* v. *Industrial Bank of Korea*, supra, United States Court of Appeals, Docket No. 21-1956-cv (court properly weighed testimony of competing experts and did not abuse its discretion in finding that defendant's expert was more convincing). In the present case, the court did not abuse its discretion in considering the opinions of Lim and Pangalangan and determining that the Philippines is a suitable forum. The court, therefore, properly found that the Philippines is an adequate alternative forum.

Finally, the plaintiffs argue that "the trial court's conditional dismissal cannot save its decision" to grant the defendants' motion to dismiss. This contention warrants little discussion. A "court may dismiss on forum non conveniens grounds, despite its inability to make a definitive finding as to the adequacy of the foreign forum, if the court can protect the non-moving party by making the dismissal conditional. This . . . does not, however, excuse the . . . court from engaging in a full analysis of those issues of foreign law or practice that are relevant to its decision, *or* from closely examining all submissions related to the adequacy of the foreign forum. If, in the end, the court asserts its 'justifiable belief' in the existence of an adequate alternative forum, it should cite to evidence in the record that supports that belief." (Emphasis added; footnote omitted.) *Bank of Credit & Commerce International (Overseas) Ltd.* v. *State Bank of Pakistan*, 273 F.3d 241, 247–48 (2d Cir.

2001). In the present case, it is evident that the court had a justifiable belief that the plaintiffs could bring this action in the Philippines. The court's memorandum of decision "closely examin[ed] all submissions related to the adequacy of the foreign forum"; id., 248; by setting forth a thorough examination of the Lim and Pangalangan affidavits. We, therefore, conclude that the court's decision to grant the defendants' motion to dismiss on a conditional basis did not constitute an abuse of its discretion.

Accordingly, we conclude that court did not abuse its discretion in granting the defendants' motion to dismiss on the ground of forum non conveniens.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The plaintiffs do not challenge on appeal the court's findings as to the remaining factors set forth in *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 466.